Chief Justice Simpson
delivered the opinion of the Court.
This is a contest about the correct construction and legal effect of the following clauses in the will of John Hughes, deceased.
“I bequeath to Charles S. Hughes, Mary E. Hughes, and Sarah F. Hughes, children of Richard F. Hughes, deceased, when they become of age, or marry, one tract of land, beginning, &c.”
“ I also bequeath to Charles S. Hughes, when of age, one negro boy between fifteen and twenty years old. Also to Mary B. Hughes and Sarah F. Hughes, when of age, a negro girl twelve or fifteen years old. This property in the event of the death of any one or moré of said children, the survivors to inherit,”
The testator had four children living, and three grand-children, the same named in theforegoingdevise, being the children of his deceased son, R, F. Hughes. And after having devised property to his children, and grand-children, he inserted the following residuary clause in his will:
“In finally settling up the business of the estate, each heir must be accountable for all personal property advanced to them, and which has not been mentioned heretofore, so that each one must equally participate— an account of which will be found with this will.-— Should there be any property remaining after settling these up, the same is to be equally divided among my children, after my debts are paid.”
On the part of the grandchildren, it is contended, that under the first clause, they acquired a vested inter *116 est ¡n the land and slaves upon the death of the testator, with a right to their immediate enjoyment; and that under the last clause, they are entitled to participate in the residuum. The correctness of this construction of either of the clauses in the will, is denied by the plaintiffs in error.
To determine the legal effect of the devise of the land and slaves to the grand-children, it will be first necessary to ascertain the period referred to b}r the testator, when he directs that in the event of the death of any one or more of them, the survivors are to inherit the property devised. It is clear, considering the whole context of this clause in the will, the testator did not intend the devise over to the survivors to take effect on the decease of the prior devisee, under all circumstances whenever it might occur, but by applying terms of contingency to an event in itself certain and inevitable, it is manifest he intended to connect it with some circumstance, or restrict its occurrence to some period of time, thereby making it contingent. To what period then did he refer, prior to which if either of the devi-sees died, the property devised to him or her was to go over to the survivors? It must have been either the time of his own death, or of the marriage or arrival at full age of the devisees. In the case of an immediate devise, it- is generally true, that a devise over in the event of the death of the preceding devisee, refers to that event occurring in the lifetime of the testator, yet this construction is only allowed to prevail where there is no other period to which the words can be referred; because a testator is hot supposed to contemplate the death of the object of his bounty in his own lifetime. But where there is another point of time to which such dying may be referred, (as obviously is the case here,) the words in question áre considered as applying to the event of the death of the devisee at any time prior to the period referred to: 2 vol. Jarman on Wills, side page • 665, On this principle the devise ih this case must be construed to mean, if either of the devisees die before *117 he or she becomes of age or marries, the devise over is to take effect; but if the event do not occur before that period, then the devisee is to have an absolute and indefeasible title to the property devised.
A devise to one, ‘when of age, or marry,’ ibis pro* periy in Die event of Lhe death of any one or more of said ch Wren, the survivals to inheiit: Held that the time of the death of the devisee, or tíieir. marriage, was the point of time at which the eon lingeney was lo determine, and the right become absolute — -& not the deaih of the testator.
Such being the true meaning of the devise, the reference to the time when the devisees become of age or marry, is by legal construction supposed to have been made to designate the period when their interest in the property should become absolute and indefeasible. Although a devise to a person when he attains a particular age, standing alone would be considered as contingent, yet if it be followed by a limitation over, in case he die under such age* the devise over is considered as explanatory of the sense in which the testator-intended the interest of the devisee in the property to depend on his attaining the specified age; and therefore the estate is construed to vest upon the death of the testator, subject to be defeated by the death of the devisee before the period arrives, when it is to become absolute and unconditional. There is also another class of cases in which a similar devise without any limitation over is so construed, that the words which import contingency and the creation of a future interest, are made to refer to the futurity of the possession, occasioned by the carrying out of a prior interest, and as pointing to the determination of that interest, and are considered as not used with a view to postpone the vesting of the estate.
But as the cases last alluded to, apply to a devise of a different description from the one contained in this will, we will only refer to those cases in which there was a limitation over, and which settle the doctrine that in 'such cases, the estate devised vests upon the death of the testator, although the expressions used seem to create a -future interest.
In the case of Doe on the demise of Hunt vs Moore, (14 East, 601,) where the devise was to M., “when he attains the age of twenty-one years,” to hold to him his heirs and .assigns forever; but in case h.e should die be *118 fore he attained the age of twenty-one years, then over; it was held, the estate vested immediately, that the devise did not make the devisees, attaining the age of twenty-one, a condition precedent to the vesting of the interest in him, but the dying under twenty-one, was a condition subsequent on which the estate was to be divested.
.--And that t>>e <lensee took an immediate interest upon the death of the testator, defeasible upon his or her death before mar triage or airival at the age of 21, and the right of possession also.
The same construction prevailed in Edwards vs Hammond, (3 Lev. 132,) where A surrendered the reversion in fee in customary lands to the use of himself for life, and after his decease, to the use of his son H, and his heirs and assigns forever, if it should happen that he should live until he attained the age of twenty-one years, provided always and under the condition, nevertheless, that if II died before he attained that age, then the premises to remain to A in fee; it was held, that although upon the first words, this seemed to be a condition precedent, yet upon all the words taken together, it was an immediate devise to PI, subject to be defeated upon a condition subsequent, if he did not attain the age of twenty-one years.
This rule of construction where there is a devise over, is further sustained by the cases of Doe on the demise of Rooke vs Nowell, (1 Mau. & Selw 327,) Snow vs Pouldon, (1 Kean, 186,) and Broomfield vs Crowder, (1 Bos. & Pul. New Rep., 313.) See also 1 vol. Jarman on Wills, side page, 738.
By applying this rule of construction to the devise under consideration, the devisees upon the death of the testator acquired an immediate vested interest in the land and slaves, defeasible upon the death of the devi-see before the time specified, at which the estate was to become absolute. But although they take a vested estate, the question still arises, are they entitled to the immediate possession and enjoyment of the property? In that class of cases in which the testator has carved out a prior interest, and where, in making the posterior devise, words that are apparently creative of a future estate, and import a contingency, are construed as re *119 ferring merely to the futurity of possession, occasioned by the carving out of the prior interest, and as pointing out the determination of that interest, and not as designed to postpone the vesting, the same question cannot arise. But as the same words, in cases where there is a limttaiion over, are construed, not to refer to the time of enjoyment, but to the time when the limitation over fails, and the estate becomes absolute in the first devisee, the right of enjoyment would seem to be a legal consequence of the vesting of the estate, unless it be inconsistent with the other provisions in the will.
Thesame rules of construction should he appii’d in construing tire clause of a will of personal property and land, where the same clause embraces both.
Slaves bequeathed to be of a para ticular description when the legatee is 21 y’is old, should not he set apart to the legatee, and he has no right to the possession, until the age of 21.
The title having vested in the devis the heir; at law have no right' to the possession, nor can the executors take it in their fiduciary capacity, unless by an authority, express or implied, derived from the contents of the will. The only provision in the will, that bears at all upon the question, is the direction given by the testator that the devisees should be kept in his family, and supported and educated without charge, ‘unless their mother should determine otherwise, in that case his estate was not to be chargable for their support.” He does not appropriate to their support the rents of the land devised to them, but makes their support a charge upon that portion of his estate that his executors were to take into their possession, and makes no disposition, even by implication, of the rents of this land, accruing prior to their marriage or arrival at the age of twenty-one. There is nothing, therefore, contained in the will that supercedes their right as owners, to the rents of the land, the title having vested in them as devisees.
The bequest in relation to the slaves, differs however from the devise of the land, not only because of the different nature of the property, hut also because the description or character of the subject of the gift refers to, and is regulated by the time when the legatees attain the age of twenty one. A distinction seems to be taken in some of the books, whether well founded or ^not we will hot stop to inquire, between a bequest of personal property and a devise of real estate, (1 Yol. *120 Roper on legacies, 386,) making words in a will when applied to personal property, suspend the vesting of the legacy, until the period specified, which when used in devising real estate, bear a different construction and produce another effect. We would however, barely remark upon this subject, that we can perceive no good reason why expressions in a will importing a contingency, may not beso explained and controlled by the Context, as not to prevent a legacy of personal property from vesting, or why the same words when used in the same clause of a will, to dispose of real and personal property, should not have precisely the same signification and effect., so far as the vesting of the property depends upon their construction.
The bequest in this case, however, is not of a specific slave to either of the legatees, but of slaves that are to be of a particular description when the íégatees, arrive at full age. They are to be furnished by the executors out of the estate in their hands, and are then to be of the age mentioned. If it be conceded that the legacies Vested immediately upon the testator’s death, j?et it is evident the testator intended to postpone the possession and enjoyment of them until the period specified. If the.slaves are now furnished and set apart for the legatees, of the description mentioned in the will, they will not suit that description when the legatees attain the age of twenty-one; thejT may die in the meantime, and the testator’s intention be thereby defeated, both as it despects the first bequest and the limitation over. By the express direction of the testator, the legatees are t.o be supplied with slaves of the de-. scription mentioned when they arrive at age. This bequest cannot be satisfied by a previous designation'of a slave to be applied to that purpose, if the slave should die before the period arrives. The slave must be in.existence at the time, and then suit the description given, in order to comply fully with the in.tentio.n of ;the testator. We are therefore of the opinion that the Iégatees «re entitled to the «laves, tvhen, they arrive at full age, *121 and not previously; and as the estate necessary to enable the executors to satisfy the bequest, has to remain ill their hands until that time, the profits arising from it, will belong to the estate, and be carried into the residuum, and not belong to these legatees.
The word chi!” dren is to be cort slrued not to eni brace grand-chip dren unless there be something in the will requiring such a construction — a case id which the grandchildren are embraced by the teitnused — heii'á for eml'dfen. ■
The testator in the last clause in the will directs his remaining property to be divided among his children. It is contended that the expression here used, does not include grandchildren, and therefore, that they take no interest in that part of his estate embraced in this residuary devise. The wbrd children is construed not to embrace grandchildren, unless there be something contained in the will which manifests the testator’s intention by the use of the word, to include not only his 'children, but also his grandchildren. In this clause he uses the word heir first, ánd then children, and seems to fefer to Ihe same persons throughout. He must be understood therefore-, as having used the term children as synonymous with heirs. We think he intended to usé it in that sense, and did not intend to exclude his grand children, especially as he says in the same clause, th'at in finally settling up his estate, it must be done so that éaéh héir shall equally participate; not in the settlement merely, as we understand him, but in the balance of the estate, not previously disposed of.
In disposing of these questions in the Court below, the Chancellor gave the sanie construction to the will which has been given to it in this opinion, except that he made nb discrimination between the devise of the land; and the direction concerning the slaves, but decreed that the devisees were entitled to the immediate possession and enjoyment of both land and slaves. In this we think he erred in regard to the slaves, and for this 'error alone, the decree must be reversed.
As it respects the cross errors assigned, objecting to the commissioner’s report and the decree, for failing to allow rents on the land devised from the death of the testator, it is only necessary to remark, that it does not appear that any rents had accrued, or that the land was *122 }n a condition to yield annual profits. No testimony was adduced on the subject before the commissioner, nor any exception taken to his report on this ground. The cross errors must therefore be considered unavailing. But as the decree has to be reversed for the error indicated, an inquiry may be made upon this point upon the return of the cause to the Court below.-
Clemons for plaintiffs; Speed, and Williams & Graves¡ for defendants.
Wherefore the decree is reversed, and cause remanded for further proceedings and decree in conformity with this opinion. Each party must pay their own costs in this Court.